Andrew Ewing, Special J.,
delivered the opinion of the court.
This is an action of detinue, instituted in the circuit court of Sumner county, to recover certain slaves alleged to he the property of the plaintiff. It appears from the hill of exceptions, that in the year 1826, John Harris died intestate in "Wilson county, the owner of a negro girl, EUm; and soon after his death, his widow, Celia Harris, and the plaintiff, Robert Hallum, qualified as his administrators on his estate, and sold the girl EUm, to the widow. There is some proof in the record, tending to show that during the same year Celia Harris made a gift of this negro to her uncle, the said "Robert Hallum, and that he shortly afterwards made a *371 gift of the life estate- to her,' reserving to himself the remainder in the slave. There is other evidence indicating that it was a loan to her of the negro during her life, and then to he returned to Hallum. We may remark that the whole proof on this subject is vague and unsatisfactory, and that it is very difficult, from the testimony, to give a proper statement of these transactions between Mrs. Harris and Hallum. It is certain however, that the slave was re-delivered to Mrs. Harris, and in the. year 1827 she intermarried with the defendant, Yourie, who took possession of the negro, and has held her and her increase ever since, claiming and using them as her own, adversely to the right of the plaintiff, and most probably with his full knowledge of the fact. Mrs. Yourie died in 1850, and this suit was brought soon afterwards for -the recovery of Mima and her increase.
Humerous questions of exception to the evidence and charge of the circuit judge have been argued and presented for adjudication, but as we have based our decision on two points, which will be decisive of the case, it is deemed unnecessary to advert to the others.
The circuit judge charged the jury amongst other things, as follows:
“It is next insisted, that if the plaintiff ever had a title to the slave that he gave her to Mrs. Harris during her life, and that such gift being verbal and accompanied by delivery, passed the absolute title to Mrs. Harris. I do not think that is law. If you believe that in 1826 Hallum gave or loaned the slave to Mrs. Harris for her life, and delivered to her the possession, so long as Mrs. Harris continued to hold *372 the slave in subordination to Halliun’s title, and to use her in the manner contemplated by the gift, or loan, Hallum had no power to retake the gift, or loan, and consequently no length of time would operate to bar his recovery at the death of Mrs. Harris. But, if the proof shows what is insisted for by the defendant, that the gift or loan was made in 1826, that Mrs. Harris intermarried with Tourie in 1827, and that upon said marriage defendant took possession of the slave in his own right and as his absolute property, that from thence hitherto he has continued to hold said slave and her increase adversely to Hallum and every body else, and that this adverse holding has been open, notorious and public, with the knowledge of Hallum all the time, such adverse holding, .for such length of time, would operate as a bar to Hallum’s right of recovery. Notice to Hallum of the adverse holding of Tourie may he proved as any o.ther fact, by direct and positive, or circumstantial proof.”
The jury found a verdict for defendant. The court refused a new trial, and the plaintiff prosecutes his appeal in error to this court.
^ We cannot assent to the correctness of the statement, that previous to our act of 1831, ch. 90, a valid estate in remainder in a slave could be reserved in parol by the donor of the life estate. We have been referred by the counsel for the plaintiff to no authorities in support of such a position, and our own examination has satisfied us that such an estate would be invalid, and that the whole interest would pass by the gift to the donee. ]j It is decided in the case of Payne vs. Lassiter, 10 Yerger, 510, that a parol gift of the *373 remainder in a slave, previous to our act of 1831, was void; and the court say in that case, “ thaf^ by the rule of the common law a reservation in remainder of a chattel dependant on a life estate, was admitted with much douht and difficulty, even when created by will or deed, and that such reservation was first decided to be valid in Manning’s case; 8 Coke, 95.” We think the true history of the law on this subject is here given, and we have found no subsequent case, either in England or America, where this doctrine has been extended so as to embrace the case of a parol remainder)) We do not perceive on principle, the difference between the cases of a parol gift and a parol reservation of a remainder in a chattel; in neither case does possession follow the subject matter disposed of, and they are alike subject to the objection of a disjunction of the possession from the property, without written evidence, establishing the title, leaving it to be litigated between the parties, at the distance of thirty or forty years from the time of the gift, and the result dependent upon the frail memory of persons who were uninterested at the time, in remembering the nature and character of the transaction. Our views on this branch of the case are supported by decisions in courts of North and South Carolina, as we find them reported in 3 Murphy, p., 493; and 9 Bunard, 411, and we are aware of no conflicting authority A
W© agree with the circuit judge, in "holding that a parol loan of the use of a sláYe for life, or any other shorter period, would be valid a and so long as the property was held in subordinatidn to the title by the loan, no bar o'f the statute of limitations could be *374 interposed to prevent tire recovery by tbe loanor of bis property; and we bold further, that be was correct in saying, that, “ if Mrs. Harris intermarried with Yourie in 1826, and Yourie thereupon took possession of the slave, claiming her in his own right, adversely to the right of Hallum, and this claim and possession have been, continued ever since, open, public and notorious, with the knowledge of Hallum all the time, then the right of the plaintiff would be barred, and the notice to Hallum might be proved as any other fact, by direct and positive, or circumstantial evidence.”
"Whatever may be the distinction in the civil law, between precarious and definite loans, no such rule obtains under the common law; and all pure loans, under our system, whether for a definite or indefinite period, are generally regarded as tenancies at will, and subject to be revoked at any time by the will of the donor, or their character to be changed by marriage, in the case of a female loanee, if accompanied with a subsequent adverse holding on the part of hex*' husband, which is known to the loanor. See Story on Bailments, 253, 258, 277.
It is insisted by the counsel for the plaintiff, that such is not the rule established in Tennessee, and we are referred for authority to 2 Yerger, p. 74. The facts of that case are, that a fathei*, on the marriage of his daughtei-, placed a slave with his son-in-law, with the agreement that he was to be l’etained until replaced by the gift of a negro girl. The slave remained in possession of the son-in-law some three years, and then the father-in-law sent the negro girl, but neglected to retake possession of the first slave, and after *375 five years tlie . creditors of tlie son-in-law sought to subject tbe first negro sent to tbe payment of bis debts. Tbe court beld that tbe loan contemplated in our act of 1801, cb. 25, § 2, as fraudulent, is a loan for an indefinite period, and therefore did not embrace tbe case then before them. We may remark: 1st, that tliis decision only gives a construction to tbe words used in a very stringent but salutary state of frauds; a statute tbat converts neglect and delay into a positive presumption of fraud, and thus without bis consent, divests a loanor of bis property. Tbe court might well regard tbe legislature as not intending to- make loans for a definite period, evidence of fraud, under such a statute, but they do not say, or even intimate an intention of changing tbe general rule of tbe common law as to pure loans. Furthermore, tbe loan in tbat case is placed on tbe footing of a contract, as it was somewhat in tbe nature of an advancement, and therefore has no relevancy to tbe decision as to tbe rights of tbe loanor and loanee in tbe case of a stranger. We at least, are not disposed to regard tbe authority of tbat case, as in conflict with tbe views we have expressed.
Tbe rule established in FTortb Carolina, between bailor and bailee of slaves, as to tbe necessity of redelivery of possession by tbe bailee, or tbe proof of direct and positive notice to tbe bailor, of adverse bolding, before tbe statute of limitations could be interposed as a bar to tbe recovery of tbe bailor, has never been admitted by our courts, and tbe rule of our State is correctly stated in Turner vs. Granger, 5 Humph., 347, and numerous other cases.
*376 It follows, from the proposition we have stated, that the charge of the circuit' judge was not erroneous against the plaintiff, and therefore the judgment of the circuit court is affirmed.